313 So.2d 898 (1975)
Roy C. WOOD, Jr., Plaintiff-Appellee,
v.
GIBSON CONSTRUCTION COMPANY, INC., Defendant-Appellant.
No. 12605.
Court of Appeal of Louisiana, Second Circuit.
June 3, 1975.
Rehearing Denied July 1, 1975.
Writ Refused September 26, 1975.
Peters, Ward & Miller by Hugh T. Ward, Shreveport, for defendant-appellant.
Cook, Clark, Egan, Yancey & King by Stephen R. Yancey, Shreveport, for plaintiff-appellee.
Before BOLIN, PRICE and DENNIS, JJ.
DENNIS, Judge.
This is a suit by a homeowner seeking by mandatory injunction to compel a subdivision developer to prevent alleged unnatural drainage onto the homeowner's property.
Defendant, Gibson Construction Company, Inc., owns and has developed for residential purposes Carriage Manor subdivision, *899 which lies in the southern part of Shreveport. The home of Roy Wood, plaintiff, is located in South Forest subdivision, an adjacent tract of land developed before Carriage Manor. Defendant's property is higher in elevation and its natural drainage is from south to north across the plaintiff's property. Wood purchased his house and lived there without any problem for about one year prior to the development of Carriage Manor subdivision. During this time defendant's property, which is directly behind Wood's lot, was unimproved and thickly covered with vegetation. However, a few months after the defendant cleared its land and commenced development, Wood, began to experience flooding with each heavy rainfall. From the first flooding in August, 1972 until the date of the trial on January 31, 1974, Wood's lot was inundated by water, mud and debris numerous times. According to Wood, on eighteen of these occasions the rising water actually invaded his house.
In response to Wood's complaints the defendant made several efforts to correct the drainage problem. Not long after the first flooding in August, 1972, defendant installed an eighteen inch drain pipe along the side of Wood's lot in an attempt to carry water underground from Carriage Manor past the lot and into the street and surface drainage system of South Forest subdivision. When this proved unsuccessful defendant constructed a three foot concrete wall just below the top of the drain on its property leading into the eighteen inch pipe. The wall was fortified with two earthen dams which eventually washed away. Defendant then erected a creosote post and cement retaining wall along the rear of Wood's lot designed to prevent water from draining directly onto it. It is disputed whether this measure cured or alleviated the flooding. Defendant also offered to contribute toward constructing a more effective underground drainage system in South Forest subdivision, but the proposal failed because the other property owners there would not agree to pay their share.
Defendant concedes that the clearing, grading and development of its property initially caused a more rapid and channelized flow of water onto plaintiff's homesite. However, defendant contends that it has not increased the total volume of water draining onto Wood's property, that the flooding of Wood's property had been corrected by the time of the trial, and that, in any event, Wood will not sustain irreparable damage because of the drainage. After a trial on January 31, 1974, the district court, without assigning oral or written reasons, rendered judgment on November 20, 1974, consisting of a mandatory injunction compelling defendant to build a permanent retaining-type structure or to otherwise correct the unnatural drainage from its land onto plaintiff's. Defendant appealed and we reverse for the reasons hereinafter assigned.
Plaintiff prayed for injunctive relief only. Pertinent to our review of the district court's action in granting the injunction is Article 3601, LSA-C.C.P., which provides as follows:
"Art. 3601. Injunction, grounds for issuance; preliminary injunction; temporary restraining order
"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. . . ."
Irreparable injury for which an injunction will lie is that for which an injured party cannot be compensated adequately in money damages, or for which damages cannot be measured by a pecuniary standard. Danzie v. Rutland, 232 So.2d 303 (La.App., 2d Cir. 1970); McBride v. Duckworth, 232 So.2d 122 (La.App., 2d Cir. 1970).
*900 The Civil Code, in Chapter 2, Of Servitudes Which Originate From the Natural Situation of the Places, provides:
"Art. 660. Natural drainage
"Art. 660. It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
"The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of water.
"The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome."
Article 660 is to be liberally construed in favor of the estate to which the servitude is due, and its owner may cut ditches to concentrate and speed the flow of water beyond the slow natural process by which they would ultimately reach the same destination, provided, however, that the alteration in method of drainage does not cause a greater quantity to flow than before. Guesnard v. Bird, 33 La.Ann. 796; State ex rel. Wood v. Pinder, 41 So.2d 479 (La.App.1st Cir. 1949); Freestate Industrial Development Company v. T & H, Inc., 209 So.2d 568 (La.App.2d Cir. 1968).
In the instant case the defendant developer brought about a concentration and more rapid flow of water beyond the natural slow process by clearing vegetation from his land, constructing streets and building sites, and installing drains. The plaintiff failed to prove, however, that the alteration of drainage on defendant's property had caused a greater quantity of water to flow onto plaintiff's property. Two civil engineers called by the defendant, testified that, prior to the defendant's development, seventeen acres of its property drained across Wood's lot, but that in subdividing the property the drainage of at least six and one-half of these acres had been diverted to another area. Because of the reduction in total acreage draining onto plaintiff's property, both engineers expressed the opinion that defendant's development may have created a more rapid and complete runoff of water, but it did not cause an increase in quantity of water flowing onto Wood's homesite.
A major cause of the flooding on plaintiff's lot was the failure by the developer of South Forest subdivision, which contains Wood's homesite, to install a subsurface drainage system. Had such a system been available, defendant could have laid a much larger subsurface drainage pipe from its property across plaintiff's lot. By connecting a larger pipe directly to a subsurface drainage system in South Forest subdivision much more of defendant's drainage could have been diverted into the subterranean system without overflowing onto the surface of Wood's lot. According to both engineers, the drainage system in South Forest is inadequate because it failed to take into account the drainage and future development of the property upon which Carriage Manor subdivision is now located.
The evidence is in conflict as to the ultimate effect of all defendant's efforts to prevent the flooding of Wood's homesite. The final step taken by defendant, the laying of the creosote poles and concrete retaining wall across the rear of Wood's lot, was not accomplished until the first week of January, 1974. Wood testified that between then and the date of the trial on January 31, 1974, his house had been flooded three times. One engineer and defendant's president testified that they had inspected the premises during this period and found no evidence of flooding. Both engineers stated that as the number of residential houses in Carriage Manor increase, with their attendant lawns and shrubbery, the flow of water onto plaintiff's property will be further reduced and retarded. Furthermore, they stated that Shreveport received abnormally heavy rainfall which *901 caused flooding in many areas during both winters with which we are concerned in this lawsuit. Although we do not find that the plaintiff has been freed of the threat of flooding, it is apparent that the problem had diminished considerably by the date of the trial.
It may be possible for the proprietor of higher property to breach his obligation under Civil Code Article 660 to refrain from rendering the natural servitude of drainage more burdensome, without causing a greater quantity of waterflow, despite the liberal jurisprudential interpretations of the article in his favor. It is not difficult to envisage situations in which the proprietor above, by extensive paving and modern drainage methods, could place an unreasonable burden on the estate below with an extremely rapid and concentrated runoff, without increasing the amount of water drained. However, this is not a proper case in which to make such a construction of the Code article, because it is not necessary for us to decide if defendant has rendered the servitude more burdensome or if it is liable in damages.
The crucial question presented here is whether plaintiff will suffer irreparable injury, loss, or damage in the absence of injunctive relief. From our review of the evidence we conclude that the plaintiff has failed to prove that he is threatened with this kind of injury. The steps taken by defendant have at least reduced the extent to which his property will be flooded. The inevitable addition of greenery in Carriage Manor subdivision will further ameliorate plaintiff's predicament. The record does not support a finding that, if the flooding of his property recurs, the damage thereto will be so extensive that it cannot be adequately measured and compensated by a money award, in the event it is determined that defendant is legally responsible. Therefore, the injunction should not have been issued.
For the reasons assigned herein, it is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby annulled, reversed and set aside and judgment is rendered herein in favor of defendant, Gibson Construction Company, Inc., and against plaintiff, Roy C. Wood, Jr., cancelling and dissolving the writ of preliminary injunction herein issued; all costs of this appeal to be paid by appellee, Roy C. Wood, Jr.
Reversed and rendered.