357 So.2d 1230 (1978)
Joseph G. KEY, Plaintiff-Appellee,
v.
LOUISIANA, DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 13499.
Court of Appeal of Louisiana, Second Circuit.
March 27, 1978.
Rehearing Denied May 10, 1978.
Writ Refused June 30, 1978.
*1231 Johnson & Johnson by Don H. Johnson, Monroe, for State of La., Dept. of Highways, defendant-appellant.
Baker, Culpepper & Brunson by Bobby L. Culpepper, Jonesboro, for Joseph G. Key, plaintiff-appellee.
Brown, Wicker & Lee by O. P. Barnes, III, Monroe, for third party defendant-appellee, Louisiana Paving Co., Inc.
Before BOLIN, HALL and JONES, JJ.
En Banc. Rehearing Denied May 10, 1978.
JONES, Judge.
Defendant in this inverse condemnation proceeding appeals a judgment awarding plaintiff damages as a result of flooding and silting of his residential rent property and denying its third party demand against the contractor. The award was based upon a finding that plaintiff's damages were caused by defendant's construction activities in widening U. S. Highway # 167 in Jonesboro, Louisiana.
We modify the judgment of the trial court by reducing the damages awarded and eliminating the $950 expert witness fee, and as modified, affirm.
In the spring of 1974 plaintiff acquired by donation his father's nice frame home located on Cooper Street in Jonesboro. The lot fronted 68 feet on Cooper Street and was located approximately 200 feet north and east of # 167 with an elevation 17 feet lower than # 167. The lot was subject to a servitude of natural drain from property south and east of it. Cooper Street runs north-south and intersects # 167. Although # 167 generally runs north-south, near its intersection with Cooper Street, it curves sharply to the east.
Because of the lower elevation of plaintiff's lot, his father, following construction of the home in 1950, constructed an eight inch retainer wall along its south line and along its east line adjacent to Cooper Street. These walls served as a barrier to water draining from the south and east and aided in channeling it into underground drainage lines constructed to drain the property. There was a fifteen inch underground drainage line along the front of the property which carried water from the south into an east-west ditch located along the north line of plaintiff's property. This ditch drained into a large drainage ditch which lay along plaintiff's west line. There was a four inch underground drainage line of clay tile across his back yard originating near the south side of plaintiff's lot. This line terminated in the large drainage ditch on the west end of plaintiff's property. Although this lot was lower in elevation than the area south and east of it, the drainage facilities initially constructed by plaintiff's father adequately prevented any serious flood problems until highway construction activities on # 167 commenced in the fall of 1974.
In connection with this work defendant expropriated the south end of the lot located immediately south and adjacent to plaintiff's property. Defendant necessarily moved a considerable amount of dirt along its # 167 right-of-way in the proximity of plaintiff's property, including that area expropriated from the lot lying immediately south of plaintiff's property. This loose dirt was the source of most of the silt.
*1232 Defendant moved the house from the adjacent lot south of plaintiff as well as a curb along the highway in front of this lot. Before their removal these structures had diverted some water draining from the highway and property to the south in a westerly direction down the highway away from plaintiff's property. After their removal all water from the south drained across the now vacant lot onto plaintiff's property.
Defendant also removed a one inch concrete elevation along the north side of # 167 at its intersection with Cooper Street which had constituted a small barrier and its removal increased the water flowing down Cooper Street to plaintiff's lot. In building the new highway defendant substantially improved the drainage along the highway by constructing catch basins, connecting drain pipes, curbs and widening pavement. All of these factors increased the speed with which water flowed upon plaintiff's property from the higher # 167 located to his south and east.
Following commencement of these construction activities plaintiff sustained flooding and silting in the garage and utility room on the Cooper Street lot. Heavy silting occurred in his front and back yard. This condition continued to exist during heavy rains from the late fall of 1974 until the early spring of 1977 when plaintiff completed the drainage improvements hereafter described.
Initially plaintiff attempted to alleviate the condition by replacement of drainage pipes in his front and back yards. These changes failed to stop the excessive flooding and silting. Because the silting filled in behind the retainer walls causing water and silt to flow over the top of them, plaintiff constructed a much higher retainer wall along his south line and increased the height of the retainer wall along his front yard. He constructed an open concrete conduit traversing his back yard and connecting with the drainage ditch located on the west end of his property. He constructed a concrete driveway some twenty feet wide along the south side of his property specifically designed to carry the water which drained from the south and east into the conduit which crossed his back yard. The higher retainer walls created a barrier and stopped the water from the south and east from flowing directly upon plaintiff's property at the point where they were located and aided in directing the water into the drain pipe located along plaintiff's east line, onto the driveway and through the conduit across plaintiff's back yard.
Following addition of all these structures designed to more efficiently drain plaintiff's property, the excessive flooding and silting he experienced from the time the widening activities commenced in the fall of 1974 ceased.
The trial court awarded the damages relying on Reymond v. Department of Highways, 231 So.2d 375 (La.1970).
Defendant assigns as error (1) the finding it was liable for any damages to plaintiff's property; (2) the amount and extent of the award, and (3) the rejection of its third party demand.
In Reymond the Supreme Court recognized the Department was liable for physical damages which the property sustained as a result of highway construction, even though no portion of the property damaged had been expropriated in connection with the project:
"Article 1, Section 2, of the Louisiana Constitution reads in part: ` * * * Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.' (See also Article 4, Section 15.) Sections 19 and 19.1 of Article 6 authorize the Legislature to define the Department of Highways' exercise of eminent domain, and under the authority of R.S. 48:441 et seq. the Department has expropriated property for Interstate 10 in the vicinity of plaintiff's property. Since a taking or damaging of property may in fact occur without expropriation proceedings by a public body through oversight or lack of foresight, there must be some proceeding whereby an owner may seek *1233 redress when his property is damaged or taken without the proper exercise of eminent domain. Such an action is often referred to as `inverse condemnation', and our Article 1, Section 2, and Article 4, Section 15, support a proceeding in the nature of inverse condemnation by such an affected property owner." Id. page 383 (See 1974 Constitution, Art. 1, § 4).
Defendant recognizes plaintiff's property has been subjected to flooding and silting but contends that these occurrences did not create liability on its behalf because plaintiff's property is subject to a drainage servitude within the provisions of La.C.C. Art. 660.[1] Defendant contends its activities on the dominant estate did not render the servitude more burdensome.
Our jurisprudence recognizes activities upon the dominant estate which improve its drainage and increase the speed with which water flows across the servient estate but which do not increase the volume of water received by the servient estate do not fall within the prohibitive provisions of C.C. Art. 660 wherein "the proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome" Long v. Childress, 255 So.2d 822 (La.App., 2d Cir. 1972, writ refused).
The evidence establishes plaintiff's property probably is receiving no more water than it received before construction began though it is receiving the water much faster. This fast-moving water from the dominant estate carried large volumes of silt picked up as it passes over construction areas in the highway right-of-way, including that expropriated portion of the right-of-way immediately south of plaintiff's lot.
Pictures in evidence reflect this silt was deposited in large volumes on the plaintiff's lot. Under these circumstances defendant's activities on the dominant estate made the servitude of natural drain over plaintiff's property substantially more burdensome. Kendall v. State, Dept. of Highways, 168 So.2d 840 (La.App., 2d Cir. 1964). Plaintiff's property has been damaged for public purposes even though his property was not expropriated. He is entitled to compensation for those damages.
"The damage which a property owner may claim against one exercising the power of eminent domain would exclude non-physical damage, and the physical damage which is recoverable must be proximately caused by the improvement as designed and constructed or must be the probable, the immediate, the direct, and the necessary result and effect of the activities engaged in during construction. In short, compensable physical damage to adjacent property is restricted to that which is actually a consequence of the activity complained of." Reymond, supra, page 384.
The trial court found that plaintiff expended $3,714.11 together with $200 of his own labor to protect himself from water and silt, and the record fully supports this finding. These damages awarded by the trial court are in the nature of the cost of cure which is a proper manner to determine damages in this unusual situation. Reymond; Kendall.
The trial court awarded plaintiff $5,000 for depreciation of the value of his property as a result of construction of the drainage facilities to protect his property. This award was based upon testimony of plaintiff's expert witness who concluded that the existence of these structural aids to drainage would lower the value of the property by $10,000. The appraiser opined that a prospective purchaser, upon observing the drainage facilities around the property, would be less enthusiastic about acquiring it because he would be knowledgable that the property had drainage problems.
*1234 Plaintiff's property has always been located in a valley-type situation and had structural aids for drainage prior to defendant's activities. The more elaborate aids plaintiff constructed following defendant's activities are attractive, more effective and therefore should not cause a prospective purchaser to be more concerned about the adequacy of plaintiff's drainage than he would have been upon observing the previously existing retainer walls and underground drainage pipes. The logic of the appraiser being fallacious, there is no evidence in the record to support this damage award by the trial judge.
The trial court awarded plaintiff $1,000 for "mental pain, worry and anguish". This element of damage is not compensable in an inverse condemnation proceeding. Reymond, supra. See also Kendall, supra.
There is no evidence plaintiff's damages were due to negligence on the part of the contractor, nor were they due to its failure to properly perform its contractual obligations according to the plans and specifications. There is no substantial evidence in the record of any safeguards or protection that it should have used which would have prevented the damages sustained by plaintiff as a result of the construction.
Our review of the evidence fails to establish that the trial judge committed manifest error in rejecting defendant's third party demands against the contractor.
Plaintiff is not entitled to the expert witness fee because the expert testimony failed to establish damages to which plaintiff was entitled.
The judgment of the district court is amended to eliminate the $1,000 award for mental pain and anguish, the $5,000 as depreciation to plaintiff's property and the $950 expert witness fee.
As modified, the judgment is affirmed, and the defendant is cast with cost to the extent permissible under R.S. 13:4201.
NOTES
[1] "Art. 660. Natural drainage

"It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
"The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
"The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome."