FORET, Judge.
This is an action for damages and injunc-tive relief from various alleged acts of the defendants relating to a natural servitude of drain owed by plaintiffs’ property. The trial court found no damage or liability had been incurred by the defendants and dismissed the plaintiffs’ suit. Plaintiffs appeal this judgment.
In his reasons for judgment, our learned brother of the trial court accurately stated the facts of the situation, and we take the liberty of quoting therefrom:
“Plaintiffs are the owners of an unimproved lot in the City of Pineville described as Lot 30 of Pine Grove Addition fronting 125 feet on Hillcrest Drive. The Donohoes instituted this suit against the Louisiana Department of Highways and the City of Pineville seeking injunctive relief and damages for injury to this property resulting from alleged acts of defendants that had the effect of increasing the burden of the natural servitude of drain to which plaintiffs’ property is subject. In particular, plaintiffs allege that the actions of the defendants resulted in placing an increased quantity of water on their property and/or placing water on their property at a higher velocity than would otherwise occur.
“In their petition and through testimony developed at trial, petitioners complained that a number of actions taken by various parties have adversely affected the drainage on their property, including the four-laning of Louisiana Highway 28 and the construction of the Pineville Expressway project over Highway 28; the channelizing of a natural stream by the Police Jury flowing down from the north; the building of a CLECO facility on the north side of Highway 28; and the installation by the City of Pineville of tank car culverts on adjacent property. The Department of Highways was previously dismissed from the suit on an exception of prescription, leaving the City as sole defendant. The primary factual matter to be resolved concerns the installation by the City of underground tank car culverts and their effect on the Donohoe property.
“It is undisputed that the Donohoe property is lower in elevation than the property surrounding it and that it is now and always has been subject to a natural servitude of drain. In particular, Lot 30 receives natural drainage both from the north (the direction of Louisiana Highway 28) and also by a creek or stream which flows onto the property from the east. Hillcrest Drive was paved approximately 20 years ago and a 48" culvert was placed beneath Hillcrest to handle drainage. The above mentioned creek flows from east to west and enters the culvert beneath Hillcrest Drive on the eastern side and exits on the west side of the street near the Donohoe property, but actually onto the neighboring lot owned by Mr. Floyd Cagle. The water that exits from the west end of the culvert continues down a creek that roughly tracks the boundary line between the Donohoe and Cagle properties for approximately 100-150 feet until it intersects the north-south drain coming down from Louisiana Highway 28 and the combined stream then angles off to the southwest. This creek was originally 2 to 3 feet wide, but it has widened over the years due to *600 continuous erosion until it is now 10 to 12 feet wide and much deeper.
“Mr. Cagle, the Donohoe’s neighboring property owner, testified that a great deal of water at considerable velocity flowed out of the west end of the culvert and onto his lot and the Donohoe lot. This drainage caused severe erosion at the mouth of the culvert beneath Hill-crest Drive and continued to such an extent that it endangered the southeast corner of his house foundation and also was exposing a city sewer line.
“To alleviate the erosion problem due to concern and complaints by both the Donohoes and Mr. Cagle, the City of Pineville, in September, 1975, purchased two used tank cars from the Police Jury, cut off the ends to make culverts, placed these tank cars in the existing, heavily eroded ditch between the Cagle and Do-nohoe properties, and covered them over with earth and gravel. These cars were approximately 30 feet long and 77 inches in diameter. The first car is attached to the west end of the street culvert and lies entirely beneath the Cagle property. The second car is mostly on the Cagle property, but angles to the southwest and extends some 10 to 12 feet onto the north side of the. Donohoe property. This culvert empties the water coming from the east and flowing under Hillcrest Drive into the ditch that has always existed between the Donohoe and Cagle properties. Mr. Cagle gave the City permission to install the culverts, and the evidence indicates that Mr. Donohoe was present when the culverts were being installed.”
Upon appeal, plaintiffs urge that they are entitled to damages as compensation for either the taking of the servitude of drain or for trespass for the unauthorized locating of the culverts on their property. Additionally, plaintiffs request injunctive relief compelling the City to remove the culverts.
A situation factually similar to the present action was considered by the First Circuit Court of Appeal in the case of State Ex Rel. Wood v. Pinder, 41 So.2d 479 (1949). In that case, the Town of DeQuincy constructed a sidewalk across the natural drainage path of the south edge of property owned by plaintiffs’ ancestors in title and under this sidewalk laid an 18-inch culvert to drain the street onto this land. The then owner of the land dug a ditch extending from this culvert and within the natural drain through the block to the next street. Plaintiff, after his purchase of the lot, laid a line of 18-inch concrete pipes connecting the culvert under the sidewalk to a point 18 inches past his property line and then filled in the ditch on his property. When the defendant bought the adjacent lot onto which the above drained, he blocked the drain pipe coming from plaintiff’s lot. Plaintiff sued to have him remove the obstruction and the court of appeals, reversing the trial court, so ordered.
“Article 660 is to be liberally construed in favor of the estate to which the servitude is due. Guesnard v. Bird, 33 La.Ann. 766. It has been repeatedly held that the owner of an estate whose waters flow by natural drains on the land of his neighbor, may cut ditches by which the waters may be concentrated and their flow increased beyond the slow natural process by which they would ultimately reach the same destination. The evidence in this case conclusively shows that neither the Town of DeQuincy nor the plaintiff has constructed any artificial aqueduct or drain which would make the natural servitude of drain which defendant’s property owed either to the Town or plaintiff’s property more burdensome. The construction of the galvanized culvert underneath the sidewalk by the town and the culvert drain by the plaintiff have only concentrated and increased the water which would ultimately flow on defendant’s property. The defendant has utterly failed to show that this drain causes more water to flow on his property which ultimately would not flow but on account of this drain.”[1]
*601 See also Thibodeaux v. Landry, 351 So.2d 522 (La.App. 3 Cir. 1977); Wood v. Gibson Construction Co., Inc. 313 So.2d 898 (La.App. 2 Cir. 1975), writ refused; Long v. Childress, 255 So.2d 822 (La.App. 2 Cir. 1971), writ refused, 1972; Freestate Industrial Development Co. v. T. & H., Inc. 209 So.2d 568 (La.App. 2 Cir. 1968), writ refused.
Plaintiffs-appellants suggest that the ease of Key v. La., Dept. of Highways, 357 So.2d 1230 (La.App. 2 Cir. 1978), writ refused, supports their claim for damages. A careful reading of this case shows that it is factually dissimilar in that, due to heavy construction work, large volumes of silt were deposited on plaintiff’s property by the increased velocity of the natural drainage. It was by these deposits that plaintiff’s property was deemed damaged, not by the water itself. In the present situation, we find no similar allegations and thus distinguish the two cases.
As the trial judge stated in his reasons for judgment, the factual findings were that the natural servitude of drain had been only slightly redirected by the installation of the culverts:
“The evidence adduced in this case fails to warrant a finding that the City of Pineville has either increased the quantity of water flowing onto petitioners’ property as alleged nor has it increased the velocity of that water. It is obvious that the only water which exits onto petitioners’ property from the west end of the tank car culvert is simply that which flows naturally into the culvert from the eastern side of Hillcrest Drive. This has been a natural drain from time immemorial. Installing the tank car culvert merely had the effect of extending the street culvert, but this in no way caused additional water to enter the culvert from the east.
“Furthermore, the City has done nothing to increase the velocity of the water coming onto the Donohoe property. Before installation of the tank cars, the water coming from the east had caused considerable erosion at the west end of the street culvert damaging both the Cagle and Donohoe properties. According to Mr. Cagle, water would come through the culvert with such force during periods of heavy rainfall that it would literally shoot through the air at the western end of the culvert. The City has merely redirected only slightly the point at which the water enters upon the Donohoe property.”
However, we do find that the City constructed the conduit onto the plaintiffs’ property approximately ten to twelve feet without the express permission of the plaintiffs. A similar factual situation was present in Freestate Industrial Development Co. v. T. & H., Inc., supra:
“Defendant, T. •& H., Inc., has further illegally constructed a concrete conduit which extends over the property line onto plaintiff’s property and has dug a ditch from this conduit down the slope of the west bank of the Old River bed.
“The case of Landry v. McCall, 3 La. Ann. 134 (Orleans, 1848), has held that the owner of a servitude of drain may not go upon the servient estate and do any acts without the consent of the owner. Under the holding of this case and the jurisprudence which follows same, the above acts of defendants constitute an illegal trespass on plaintiff’s property.”
The court then held that there would be “very little detriment to this property by allowing a few feet of conduit to remain . . We feel an alternative award of nominal damage would be appropriate.” The court awarded plaintiff $250.00 in damages.
*602 In the present case, as somewhat more drainage pipe has been placed on the land of the plaintiff, we feel an award in the amount of $350.00 against the defendant, City of Pineville, would be appropriate and that as amended, the judgment of the trial court be affirmed.
Costs of this appeal are assessed against the defendant-appellee, City of Pineville.
AMENDED AND AFFIRMED.

. Art. 660. Natural drainage
Art. 660. It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
*601 The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome.