389 So.2d 438 (1980)
Eugene SEMON, Plaintiff-Appellee,
v.
CITY OF SHREVEPORT et al., Defendants-Appellants.
No. 14276.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1980.
Rehearing Denied October 30, 1980.
Philip K. Jones, Marshall W. Wroten, Robert J. Jones, Doran & Kivett by William J. Doran, Jr., Sp. Asst. to Gen. Counsel, Louisiana Dept. of Transp. and Development, Baton Rouge, defendant-appellant.
*439 Tucker, Martin, Holder, Jeter & Jackson by T. Haller Jackson, III, Shreveport, for plaintiff-appellee, Eugene Semon.
Lunn, Irion, Switzer, Johnson & Salley by James B. Gardner, Shreveport, for defendant-appellee, Jack Wells Clarke.
Charles C. Grubb, City Atty., Shreveport and James O. McCrery, III, Asst. City Atty., Shreveport, by James G. McCrery, III, for defendant-appellee, City of Shreveport.
Before PRICE, HALL and MARVIN, JJ.
En Banc. Rehearing Denied October 30, 1980.
PRICE, Judge.
Eugene Semon instituted this action against Jack Wells Clarke, the city of Shreveport, and the Department of Transportation and Development of the state of Louisiana seeking injunctive relief and damages resulting from the flooding of his residence. The trial court rendered judgment in solido against the city of Shreveport and the state of Louisiana for $12,000 in damages and $1,950 for expert witness fees. Plaintiff's demands against Clarke and for injunctive relief were denied. From this judgment only the state has appealed. We affirm for the reasons assigned.
The record establishes that in 1965 Semon purchased his residence which is located in the Southern Hills subdivision adjacent to the Old Mansfield Road in Shreveport. The rear boundary of Semon's property and an adjacent railroad right-of-way forms a low area which carries drainage waters from the upstream area northwest of the Old Mansfield Road and New Mansfield Road, draining through a 36-inch diameter pipe located under the railroad tract approximately 30 feet east of Semon's southeast property corner. Upstream improvements in this drainage basin within the 30 months prior to the flooding of Semon's residence included construction of the Innerloop Parkway (1-220) with an interchange at Mansfield Road (U.S. 171) and development of a small commercial subdivision on the east side of the Mansfield Road by Jack Wells Clarke. Since 1965 there have been occasions during heavy rainstorms when the drainage ditch behind the Semon residence became full and slightly overflowed its banks. However, the first time plaintiff experienced any flooding to his property occurred May 6, 1978, which is after the state began construction on the 1-220 innerloop ramp. On that date the Semon residence was flooded with water and silt to a depth of about 11 inches during a heavy rainstorm. In January 1979 plaintiff's residence was again flooded to a depth of 3 to 5 inches in a less severe rainstorm. After each of these occasions the water receded leaving a residue of silt in plaintiff's home and yard. There were other times between May 6, 1978, and May 4, 1979, during moderate rainstorms that flood waters rose to the rear of plaintiff's home threatening to enter the residence.
Plaintiff filed this suit alleging that the flooding of his residence and the damages he sustained were caused by the development of the commercial subdivision by Jack Wells Clarke, the construction of the 1-220 innerloop ramp by the State Highway Department, and approval of inadequate drainage for these projects by the city of Shreveport. Plaintiff contends that he sustained substantial damage to his residence and its furnishings and that the flooding caused him extreme mental anguish, inconvenience, and embarrassment.
After a trial on the merits the district court found the state to be liable under a combination of La. C.C. Articles 660[1] and *440 667[2] in that the state's construction of the 1-220 ramp made the natural servitude on plaintiff's property more burdensome. The court found the city of Shreveport liable under principles of negligence and found the evidence insufficient to show the commercial development of Clarke was a cause of plaintiff's damage. The court awarded plaintiff $9,500 for his special damages and $2,500 for general damages (mental anguish and inconvenience).
Appellant's primary assignment of error is that there is an absence of proof that its construction of the 1-220 ramp was the cause of the damages alleged to have occurred to plaintiff's home.
The legal principles underlying the sufficiency of proof necessary to prove causation are concisely reviewed in Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (La.1973) as follows:
To be actionable the cause need not be the sole cause, but it must be a cause in fact, and to be a cause in fact in legal contemplation it must have a proximate relation to the harm which occurs, and it must be substantial in character. (Citations omitted).
As a starting point in a review of the evidence necessary to establish cause, it must frankly be conceded that certainty is generally unattainable from the testimony produced in court. Sanders, Anatomy of Proof in Civil Actions, 28 La.L.Rev. 297 (1968). Instead, the law of evidence has long required that the testimony of witnesses be weighed by probabilities. Kemp v. Wamack, 2 La. 272 (1831).
When it is said that the plaintiff must establish a disputed fact by a preponderance of the evidence, the authorities have come to define this further as meaning that a plaintiff must prove that the existence of the disputed fact is more probable than its nonexistence. (Citations omitted).
It is an elementary proposition that causation may be proved by circumstantial evidence. In many instances, it can be proved only by such evidence. Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. (Citation omitted).
The record contains extensive testimony by several expert witnesses concerning the extent to which the construction of the 1-220 ramp increased the burden on the natural drainage servitude affecting plaintiff's property. The opinions are conflicting as to whether the unusual rainfall of May 6, 1978, would have caused the flooding of the Semon home under circumstances which existed prior to the 1-220 construction.
The testimony shows that prior to the construction of the 1-220 ramp, the undeveloped land west of the Old Mansfield Road permitted a pooling of rainfall before it began its flow through the drainage facility under the road and continuing through the ditch adjacent to the rear of plaintiff's residence. This pooling of water served to slow the rate of discharge sufficiently for the then existing drainage facilities to prevent serious overflow in the ditch along the rear of the Semon property. The dirt fill necessary for the 1-220 ramp eliminated any further pooling of water on the west side of the Old Mansfield Road in this vicinity. We find the evidence sufficient to support the trial court's finding that this drastic change in the topography by appellant's construction activities was a substantial contributory cause of the flooding of the Semon home on May 6, 1978. We are fully cognizant that the rainfall of that date was very unusual and the appellant's argument based on "Force Majeure" would appear convincing if it were not for the evidence showing the property to have flooded on at least two later occasions from a rainfall that was not highly unusual.
*441 Appellant next contends the trial court's award of damages under a combination of Arts. 660 and 667 rather than under the theory of inverse condemnation is contrary to the recent decision of this court in Key v. La. Dept. of Highways, 357 So.2d 1230 (La. App.2d Cir. 1978) and the Supreme Court decision in Reymond v. State, Dept. of Highways, 255 La. 425, 231 So.2d 375 (1970), and that damages for mental anguish and inconvenience are not allowable under these decisions.
Appellant is correct in pointing out that this court in Key ruled that general damages for such items as mental anguish were not recoverable under circumstances analogous to those presented here. However, the action for damages in Key was apparently initiated under inverse expropriation allegations and tried in both the district court and on appeal solely under this theory of recovery. There is no discussion in the opinion in Key as to whether inverse expropriation was the exclusive remedy available to the plaintiff. Although recovery was denied for such damages in Kendall v. State, Dept. of Hwy., 168 So.2d 840 (La.App.2d Cir. 1964), this court discussed Art. 667 as an available remedy to the damaged party as follows:
We are in agreement with the trial judge's conclusion. Regardless of whether the cause of action arose out of Articles 2315 or 667 of the LSA-Civil Code, whenever a governmental agency engages in an undertaking with a public purpose and public benefit which directly results in a damaging of private property the "or damaged" provision of the above quoted constitutional article is self-operating and creates a cause of action.
The apparent trend in the jurisprudence since Kendall has been to permit recovery under Art. 667 and to include damages for mental anguish and other non-pecuniary damages.
The Supreme Court has clearly held that the state or its agencies are within the purview of the terms "proprietor" and "estate" as used in Art. 667 and may be subject to the strict liability of this article for damages to private property in carrying out public works. Lombard v. Sewerage & Water Board of New Orleans, supra. Also see Chaney v. Travelers Ins. Co., 259 La. 1, 249 So.2d 181 (1971).
The Third Circuit has recently allowed recovery for mental anguish and inconvenience under the strict liability of Art. 667 in an action for flood damage to adjacent property by highway construction. LaHaye v. La. Dept. of Highways, 377 So.2d 1286 (La.App.3d Cir. 1979), writ denied 381 So.2d 1222 (1980).
We believe the prevailing authority is to permit recovery under Art. 667 and therefore we find the trial court was not in error in allowing plaintiff to recover damages for mental anguish in this instance. There is sufficient evidence to meet the strict burden of proof required by the jurisprudence to recover damages for mental anguish. See Elston v. Valley Electric Membership Corporation, 381 So.2d 554 (La. App.2d Cir. 1980).
Plaintiff had a serious heart condition and had undergone two open heart operations in past years. As he was present in him home, watching as water entered the residence in the late night hours of May 6, 1978, it is reasonable for the trial court to have found that plaintiff suffered a substantial mental trauma.
Appellant also contends plaintiff did not present adequate proof of the special damages claimed by him and that the trial court erred in awarding the sum of $9,500 for those damages. The special damages claimed by plaintiff were for damage to furniture and personal belongings in the residence. Appellant's principal complaint in this regard is to the lack of corroborating proof of plaintiff's own testimony setting forth a value for the various items he contends were damaged.
Plaintiff did not present a sales invoice showing the cost of each item when originally purchased or an appraisal of the depreciated value by a third party.
Plaintiff in amended pleadings itemized the various articles damaged and testified *442 that he and his wife went to various retail stores and priced similar quality items to those damaged and took an average of the high and low to arrive at the replacement cost. This appears to be the best available evidence under the circumstances as it would be unreasonable to expect a homeowner to have retained the original sales invoices of items of furniture and personal property acquired over a period of years. The trial judge reduced the total estimate of damages submitted by plaintiff of $12,186.45 to $9,500 and was of the opinion plaintiff had shown damages of at least this amount by his own testimony which was accepted by the court as sufficient under the circumstances.
When it is clear that a plaintiff has sustained some damages as a result of the fault of the defendant, according to our well settled jurisprudence, his demands will not be rejected merely because he cannot establish exactly the amount suffered. Under such circumstances the court must fix the quantum as best it can and, in this connection, the trial judge is vested with much discretion. Green v. Farmers' Consolidated Dairy Co., Limited, 113 La. 869, 37 So. 858; Wall v. Hardwood Mfg. Co., 127 La. 959, 54 So. 300; Schmidt v. City of New Orleans, 160 La. 281, 107 So. 110; Germann v. 557 Tire Co., Inc., 167 La. 578, 120 So. 13, and Franklin v. Arkansas Fuel Oil Co., 218 La. 987, 51 So.2d 600. Brantly v. Fremont & Gulf Co., 226 La. 176, 75 So.2d 236 (1954).
We find the trial court did not exceed its discretion in awarding a general amount for the special damages in this instance.
Appellant further complains the trial court awarded an excessive amount for the fee of Robert Jones, an expert witness called by plaintiff. The record indicates Jones, a civil engineer who was plaintiff's only expert, spent a considerable amount of time in making an analysis and evaluation of the cause of plaintiff's flooding. The amount awarded of $1,950 does not appear to exceed the discretion of the trial judge in determining the fee of this expert.
Subsequent to trial and after perfection of the appeal by the state, Semon died and his widow and children petitioned the district court and were granted the right to be substituted as parties-plaintiff in this action. Appellant has pointed out the apparent lack of jurisdiction by the trial court to have granted such an order after the appeal had been taken. As the affidavit of death and heirship has been entered in the record on appeal and as counsel for plaintiff has moved for such an order from this court under Rule XIII of the Uniform Rules of the Courts of Appeal, it is therefore ordered that Kathryn Ann Ivey Semon, Alfred Eugene Semon, Jr., John Robert Semon, and Diane Denise Semon be substituted as parties-plaintiff in this proceeding in lieu of their deceased husband and father.
For the foregoing reasons the judgment is affirmed.
NOTES
[1] Art. 660. Natural drainage

It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome.
Under the revision of Title 4, Book 2 of the Civil Code, enacted pursuant to Acts 1977, No. 514 § 1. effective January 1, 1978, La. C.C. Art. 660 has been redesignated as La. C.C. Art. 656.
[2] Art. 667. Limitations on use of property

Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.