CARTER, Judge.
This is an appeal by the City of Baton Rouge and the Parish of East Baton Rouge from a trial court judgment which permanently enjoined the City-Parish from “approving any plans and allowing any development of the 146 acres south of Barkley Place Subdivision until adequate drainage is developed from Perkins Road to Ward’s Creek
The plaintiffs in these two consolidated suits are homeowners in a subdivision in East Baton Rouge Parish, Louisiana. The *1196 subdivision is located on the south side of Perkins Road, west of Seigen Lane. Defendants are Barkley Place, Inc. (owner and developer of the land), Wiggins and Associates, Inc. (consulting engineers for the design of the subdivision), Michael A. Costan-za (first owner of lot 2), J. & H. Builders, Inc. (first owners of lot 4), and the Department of Public Works for the City and Parish of East Baton Rouge. Plaintiffs sued for various amounts of money for damages, expenses, and for the decrease in the value of their homes and alternatively for return of the purchase price of the homes. The Keiches sought an injunction against the Department of Public Works to restrain the Department from doing or authorizing any action which would increase the frequency or amount of flooding on their property.
Judgment was rendered in favor of the Keiches and against J. & H. Builders, Inc., Barkley Place, Inc., and Wiggins & Associates, Inc. for $2,500.00 and for the Archies in the same amount against Mr. Costanza, Barkley Place, Inc., and Wiggins & Associates, Inc. Plaintiffs were also awarded attorney fees against Barkley Place and Wiggins. Mr. Costanza was allowed indemnification against Barkley Place and Wiggins & Associates. (J. & H. Builders, Inc. did not file a third-party demand seeking indemnification). All third-party demands made by Barkley Place were dismissed. The court further ordered that the City-Parish be permanently enjoined from approving any plans and allowing any development of the 146 acres south of Barkley Place Subdivision until adequate drainage is developed from Perkins Road to Ward’s Creek. The only part of the judgment on appeal is the injunction against the City-Parish.
FACTS
Barkley Place, Inc. began development of Barkley Place Subdivision in 1976. The subdivision, consisting of 148 residential lots, is located on the south side of Perkins Road, west of Siegen Lane, in Baton Rouge, Louisiana. Wiggins & Associates, Inc. was retained as consulting engineers for the design of the subdivision. The preliminary plans submitted by Wiggins to the Department of Public Works showed that the building sites were to be filled to a minimum elevation of 31.5 feet and provided that a 60-inch drainage pipe would be placed under Perkins Road for drainage. These plans were ultimately approved by the Department of Public Works.
On August 26, 1977, Wiggins wrote Mr. Henry K. Schott, subdivision engineer for the Department of Public Works, suggesting that Barkley Place, Inc. be allowed to post a bond to guarantee completion of the subdivision. The letter listed certain aspects of the project that were incomplete. Neither lot elevation nor installation of the 60-inch pipe were included on the list of incomplete items.
Barkley Place, Inc. posted a bond in the amount of $49,375.00 and then sold lot two to the Costanzas and lot' four to J. & H. Builders. J. & H. Builders constructed a house on lot four and sold it to the Keiches on June 28, 1978, for $62,900.00. Mr. Cos-tanza constructed a house on lot two and sold it to the Archies on October 30, 1978, for $66,500.00.
Mr. Costanza testified that the house on lot two had flooded but that he had refurnished it before he sold it to the Archies and had advised them that it had flooded. The Archies denied knowledge of the flood. Mr. Keich testified that he had noticed a mudline on the exterior of the house before he purchased it, but was told the culverts under Perkins Road had stopped up, causing the high water.
Final plats of subdivisions are required to be filed with the Department before developers can sell lots. The Department further requires that lots subject to flooding be shaded on the subdivision plats. The purpose of this requirement is to alert buyers to potential flooding problems. The trial court found that Wiggins & Associates, Inc. and Barkley Place, Inc. purposefully misled prospective purchasers of the lots in question by showing the elevation of the lots to be 31.5 feet and that defendants never intended to fill the lots to these elevations or *1197 to install the 60" culvert. Defendants, knowing that the lots ultimately purchased by plaintiffs had not been filled and were thus subject to flooding, failed to shade the lots on the final plat. Because plaintiffs’ lots were not filled, they remain vulnerable to flooding.
Plaintiffs testified that on June 3, 1979, they noticed water rising on their property and upon checking the existing drainage pipes under Perkins Road learned that plywood and other debris had blocked the drainage, thus causing the water to back up on their property. They worked through the night to unblock the pipe and now fear that flooding may occur whenever there is a heavy rain. Plaintiffs further testified that on several other occasions water rose on their property. They often worked for hours unclogging the drain under Perkins Road so that water could flow more feely.
Barkley Place Subdivision is located south of Perkins Road. Drainage in this area runs generally from south to north across Perkins Road to Ward’s Creek.[1] Originally there were two 40" culverts under Perkins Road to facilitate drainage. Since development of the subdivision, a 60" culvert has been constructed by the State of Louisiana.
There are about one-hundred forty-six acres of undeveloped property south of plaintiffs’ homes in the same drainage area. Testimony of various representatives of the Department substantiates plaintiffs’ claims that if considerable additional development is allowed south of Barkley Place Subdivision before adequate drainage to Ward’s Creek is developed, plaintiffs’ property will be more susceptible to flooding. The trial judge permanently enjoined the City-Parish of East Baton Rouge from “approving any plan and allowing any development of the 146 acres south of Barkley Place Subdivision until the City-Parish of East Baton Rouge has adequately developed drainage from Perkins Road to Ward’s Creek...”
A departmental memorandum was prepared on March 20, 1981, by Joseph A. Donohue, drainage engineer, for Henry K. Schott, Civil Engineer, on the subject of “Drainage, Barkley Place Subdivision”. It was made at the request of Robert G. Graves, Director of the Department of Public Works. The memorandum stated that flooding in Barkley Place is a result of the lack of capacity at the culverts under Perkins Road. Surveys showed that five houses flooded in 1978 and that since then three more houses were constructed and will flood if the water rises to 30.4 feet again (the level of inundation reached in the 1978 flood). The study said that based on a 5-year storm, the houses would flood again unless a new culvert of adequate size is constructed at Perkins Road. Mr. Donohue recommended that a 4 barrel, 6 feet by 4 feet concrete box culvert be constructed at Perkins Road. He further recommended that the outfall ditch on the other side of Perkins Road be cleaned before enlarging the culvert at Perkins Road and that a larger culvert be constructed under the railroad (downstream from Perkins Road) to provide for adequate drainage to Ward’s Creek.
Mr. Schott testified that the design requirements for subdivisions in East Baton Rouge Parish are for a 5-year frequency flood. He testified that it is likely that plaintiffs’ homes will flood during a 5-year flood, but he said that if the steps recommended would be taken, that he believed the houses would not flood. He further said that development of other property upstream of plaintiffs’ homes would speed the rate of runoff and increase the burden of flooding on property downstream and make it more likely that plaintiffs’ homes would flood. Mr. Schott testified that the Donohue report was, in his opinion, accurate.
William A. Wintz, Jr., a retired professor at L.S.U., testified as an expert witness for plaintiffs. He is a registered professional engineer in civil engineering and land surveying. Professor Wintz made a visual survey of plaintiffs’ lands. He testified that for plaintiffs’ lots to flood, water has to *1198 accumulate on the south side of Perkins Road (plaintiffs’ side). Since the water cannot get under Perkins Road, it rises in a lake behind the lots and rises up and over Perkins Road and as the lots are approximately the same elevation as Perkins Road, the lots will flood when Perkins Road floods. He said that if nothing was done to the existing 60" culvert, the lots will flood again sometime in the future. Professor Wintz had reviewed Mr. Donohue’s memorandum and said that it reflected basically what he believed, that the outfall below Perkins Road would have to be cleaned to lower the flood level in Barkley Place. Other than having plaintiffs build a levee around their homes, he was of the opinion that the only way to protect plaintiffs was for the City-Parish to get the drainage open from Perkins Road north all the way to Ward’s Creek. He felt that though the present 60" culvert might be adequate for just Barkley Place, it may not be enough for new developments. He also testified that in 1978, if there had been a clean, unclogged culvert, plaintiffs’ lots would not have flooded.
Mr. Donohue testified concerning the memorandum he prepared. He was qualified as an expert civil engineer with expertise in drainage engineering. He testified that limited development upstream of Barkley Place would not have much effect on drainage, but that if the whole watershed were developed, there would be more frequent flooding. He said that to the best of his knowledge, no one in the Department of Public Works disagreed with his report. He was of the opinion that under existing conditions in a 5-year storm, water would flood Perkins Road and plaintiffs’ lots. He emphasized that installation of a new culvert before the whole drainage system is cleaned out would probably just move the problem downstream and flood Oakbrook Subdivision or other developments to the north.
Mr. Ray Burgess was Director of the Department of Public Works during the time Barkley Place Subdivision was being built. He testified that the area is a major drainage facility in East Baton Rouge Parish and that the drainage problems downstream of Barkley Place need improving at public expense. He said that the Department required the 60" culvert to be placed there in connection with the development of Barkley Place because the Department felt that this culvert would take care of the contributory amount of drainage generated by Barkley Place that would flow into the canal. He said the Department could not legally have required Barkley Place to do more than supply this one culvert and that if it had required a multi-barrel culvert without improving the outfall drainage downstream from Oakbrook Subdivision (across Perkins from Barkley Place), then Oakbrook would have flooded.
Mr. Burgess testified that by developing land upstream (south) from this culvert, the flow through the culvert is accelerated. He also said that the Department could decline to approve emptying additional water in the Barkley Place drainage system until and unless improvements were made to accommodate the additional drainage that was being placed in the system.
Mr. Charles Hair was accepted as a fact witness and as an expert witness in civil engineering particularly with regard to drainage calculations. He had been Chief Engineer of the Department for 13 years. He said that he became concerned about drainage problems in Barkley Place because the culverts under Perkins Road would not be adequate. He said to correct this, he required a 60" culvert, but that it was not added until much later and at state expense.
He testified in regard to the memorandum prepared by him on October 13, 1977 and addressed to Mr. Ray Burgess; The memorandum concerned Oak Hills Subdivision which is located south of Barkley Place and was developed soon after Barkley Place. This memorandum stated that even with the new 60" culvert, the water from Oak Hills Place would cause Perkins Road to flood. The memorandum also addressed the problems with Oakbrook Subdivision (across Perkins, north of Barkley Place) and *1199 the area downstream across the railroad, and to Ward’s Creek. Nothing was ever done pursuant to his memorandum. He testified that the recommendations in Mr. Donohue’s memorandum were basically the same as his. He said he though the plaintiffs’ homes would never be completely secure because they are below the elevation of Perkins Road, but that the frequency of flooding would be less with improvements. If the property upstream of Barkley Place continued to be developed, however, without making any improvements, the frequency of flooding will increase.
Plaintiffs argue that the testimony is unequivocal that their homes will flood with future development and that the trial judge has done nothing more than require the City-Parish to do what every one of its experts has recommended to prevent the flooding of their homes.
The Department argues that plaintiffs’ homes have never flooded and that the testimony at trial concerning possible future flooding was of a speculative and theoretical nature. The Department also argues that plaintiffs have an adequate remedy for damages under Eschete v. City of New Orleans, 258 La. 133, 245 So.2d 383 (La.1971), in the event they do suffer damages from flooding caused by the Department’s actions. Primarily the Department contends that the injunctive relief granted by the trial court was an unnecessary use of an extraordinary remedy that could not be justified under the facts of this case.
It is true that plaintiffs’ homes have not flooded since plaintiffs have purchased them, but they did flood once before they were purchased by plaintiffs. On several occasions the water had come up in plaintiffs’ yards, and on those occasions plaintiffs and others worked many hours to unclog the culverts to facilitate the flow of water under Perkins Road. The sum of the testimony of the representatives from the Department is that any significant development of land upstream and south of Barkley Place before certain improvements are made in the drainage area will cause Perkins Road to flood more frequently and cause plaintiffs’ homes to flood. This testimony was given by experts and was based on sound engineering calculations; the evaluations and conclusions are not just theoretical speculations.
However, the writ of injunction is a harsh, drastic, and extraordinary remedy and should issue only where the party seeking it is threatened with irreparable loss or injury without adequate remedy at law. Greenberg v. De Salvo, 254 La. 1019, 229 So.2d 83 (La.1969). Irreparable injury for which an injunction will lie is that for which an injured party cannot be compensated adequately in money damages, or for which damages cannot be measured by a pecuniary standard. Wood v. Gibson Construction Company, Inc., 313 So.2d 898 (La.App.2d Cir.1975), writ refused, 320 So.2d 549. In the Wood case, a homeowner sued for an injunction to compel a subdivision developer to prevent alleged unnatural drainage onto the homeowner’s property. The issue in Wood, as in the instant case, was whether the homeowner had shown he would suffer irreparable injury, loss, or damage in the absence of injunctive relief. The court in Wood found that the threat of flooding existed, but that it had been reduced by defendant’s efforts and would further be reduced by the addition of shrubbery in defendant’s subdivision. Further, the flooding plaintiff had experienced had occurred during abnormally heavy rainfall.
We also note that in Wood a major cause of the flooding on plaintiff’s lot was the failure of the developer of the subdivision where Wood’s home was located, to install a subsurface drainage system. In the instant case, it is undisputed that if Wiggins had complied with the plans submitted to the Department to increase the elevation of the lots to 31.5 feet from approximately 30 feet, plaintiffs’ homes would not flood. The court concluded in Wood that the record did not support a finding that if flooding did occur, the damage would be so extensive that it could not be adequately measured and compensated by a money award if it were determined that the defendant was legally responsible.
*1200 In the instant case, the flooding that has occurred has not been so extensive as to cause irreparable injury. Though the threat of flooding undoubtedly causes plaintiffs worry and inconvenience, these factors are not enough to impose such a drastic sanction on the City-Parish. Testimony reveals that a limited amount of additional development should not further endanger plaintiffs. The Department is fully aware of the need for improvements in this drainage area. The Department knows what effect considerable development of the acreage south of plaintiffs’ homes will have.
In the case of Eschete v. City of New Orleans, supra, plaintiffs filed suit for damages to their home and for personal injuries caused by the flooding of the Pines Village Subdivision. Their petition alleged that the city had known of the “dangerous drainage situation” in the subdivision for years and that knowing in advance that the authorization of new subdivisions in the area would cause flooding, the city “deliberately and therefore maliciously” authorized new subdivisions which caused flooding during “any ordinary heavy rainfall.” The lower court maintained the city’s exception of no cause of action, but the Supreme Court reversed, finding that plaintiffs’ petition contained all of the elements of a cause of action under LSA-C.C. art. 2315. If the Department performs such acts in the future, i.e. approving additional subdivision development south of plaintiffs’ property that damage plaintiffs, then plaintiffs have an adequate remedy under Eschete, supra.
For the above reasons, the judgment of the trial court is reversed at appellee’s costs.
REVERSED.

. Areas referred to as upstream are south of Barkley Place Subdivision and areas referred to as downstream are north of Barkley Place Subdivision.