434 So.2d 182 (1983)
ACADIAN HERITAGE REALTY, INC., et al., Plaintiff-Appellants,
v.
CITY OF LAFAYETTE, Defendant-Appellant.
No. 82-740.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1983.
Rehearing Denied July 14, 1983.
*184 Koury & Koury, Joseph Koury and Constance Koury, J. Minos Simon, Ronald Gossen, Lafayette, for plaintiffs-appellees.
Jefferson D. Hughes, III, Walker, for intervenors-appellees.
Voorhies & Labbe, Marc W. Judice, Lafayette, for defendant-appellant.
Before GUIDRY, STOKER and LABORDE, JJ.
STOKER, Judge.
The City of Lafayette seeks relief from a judgment rendered against it in favor of landowners granting damages for nuisance and diminution of property value.
This lawsuit was initiated by owners and occupiers of land proximately located to a landfill operated in Lafayette Parish by the defendant, the City of Lafayette (City). The landowners and residents occupy the position of plaintiffs but came into the litigation procedurally through intervening in the lawsuit of the original plaintiff, Acadian Heritage Realty, Inc. The latter was not affected by the particular judgment appealed from, but Acadian Heritage Realty, Inc. has pending a separate appeal which was not consolidated with this appeal.
The judgment in this case in favor of the intervenors awards damages arising from the operation of the landfill. In addition to awarding the landowning intervenors damages for diminution of the value of their land and improvements, the trial court awarded each of the intervenors $3,500 in general damages. The defendant City appeals. Two of the intervenors, Gilbert W. Gossen and Florence G. Gossen, have answered the appeal and seek an increase in damages for diminution of the value of their property.
Specific issues listed in this appeal in appellant's brief include:
(1) Does the landfill amount to a nuisance and, if so, should plaintiffs be awarded damages under the facts and circumstances of this case?
(2) Can general damages be awarded?
(3) If so, were lessors, who had a proprietary interest in the property but did not reside there, properly awarded general damages?
(4) Did the trial court err in the amount of damages awarded?
(5) Did the trial judge overstep the bounds of judicial conduct by becoming an advocate for the intervenors and thereby present an issue reviewable on appeal?
We affirm the trial court.

FACTS
The first group of intervenors consists of Gilbert W. Gossen and Florence G. Gossen, husband and wife, who own approximately twenty-one acres of land which is separated from the operations of the landfill by another twenty-one-acre tract owned by the City of Lafayette. Their property lies approximately 600 feet from the property of the defendant. (See Appendix I). The evidence indicates that this twenty-one-acre tract separating the Gossens from the sixty-one-acre landfill operation may one day become part of the landfill operation itself.
The other group of intervenors is the Guilbeau group. This group consists mainly of the descendants of Mrs. Beulah Y. Guilbeau who is an intervenor herself. Her late husband, Cyprien Guilbeau, conveyed four one-acre tracts of his forty-acre holdings to his four children and their spouses, all of whom are intervenors. The other intervenors of the Guilbeau group are one grandchild who lives on the property and one *185 lessee of part of the property. The forty-acre tract lies adjacent to the present landfill operation. (See Appendix I)
The City of Lafayette bought three tracts of land in May of 1979 and began the operations of the landfill on one of them, the sixty-one-acre tract. Both sets of intervenors, the Gossens and the Guilbeau group, made many complaints to the City of Lafayette and the State Department of Natural Resources. Finally, they intervened in the suit by the original plaintiff. Trial was held on July 30th and 31st, 1981, August 31, 1981, and September 1st and 2nd, 1981.

PRINCIPAL ISSUES BEFORE THE COURT
The briefs of counsel indicate the parties believe that the issue of the propriety of a "conditional permanent injunction," which was issued by the trial court in connection with this case, is before this Court. However, the record on appeal reveals that the City's order of appeal refers only to a judgment dated October 26, 1982 and filed October 27, 1982. This judgment was subsequently amended on November 1, 1982. The judgments appealed from do not concern an injunction.
The issues before us on appeal relate only to the diminished value of the intervenors' property and the general damages awarded.

DOES THE CITY LANDFILL CONSTITUTE A NUISANCE AND ARE DAMAGES JUSTIFIED?
As to this issue, the defendant makes two contentions. First, the City contends the trial court erred in its finding that a nuisance created by the landfill exists in fact. Second, the defendant contends this Court should take into its consideration that the "floodgates" of litigation in the lower courts would be opened if we allowed recovery for the plaintiff. The City argues that affirmance of the trial court judgment will result in an undesirable burden on the court system and "tremendous economic disaster" on municipalities providing landfill service to their citizens.
As for the first contention, a court may grant relief for operations on land causing inconvenience to neighboring property upon proof that the activity carried on is of sufficient intensity, annoyance and inconvenience that he who causes it has created a nuisance. Whether or not a nuisance exists is a question of fact. An action for such abuse of rights arises from Louisiana Civil Code Articles 2315, 667 and 668. Robichaux v. Huppenbauer, 258 La. 139, 245 So.2d 385 (La.1971); Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La.1975); Acadian Heritage Realty, Inc. v. City of Lafayette, 394 So.2d 855 (La.App. 3rd Cir.1981). There is a sufficient factual basis in the record to conclude that a nuisance in fact did exist.
Testimony by the intervenors and other witnesses overwhelmingly established that noxious odors emanated from the landfill site, that flies and other pests abounded because of the landfill, and that the noise of compacting and earth-moving machines operating at the landfill site was disturbing to the residents of the neighboring estates. In addition to the disturbances set out above, and in contravention of defendant's own rules, the landfill personnel at the site have accepted loads of garbage from operators of uncovered trucks. As a result, an unusual amount of litter has been strewn about the roads in the area of the landfill. The garbage from the landfill has blown onto neighboring properties. Landfill operations have affected the drainage of water on some of the neighboring property. At the time of the trial in August and September, 1981, the alternating layers of the garbage and dirt were piled as high as thirty feet in the estimate of some of the witnesses. Intervenors complain that the landfill area was, at least, unsightly. Intervenors also complain that the number of rats and stray dogs in the area has increased due to the attraction of the landfill.
The trial court found that the odors emanating from the site were "peculiarly noxious" and resulted from improper daily coverage of garbage with dirt as required by defendant's own rules and regulations.
*186 The defendant contends that the testimony of the intervenors describing the aspects of the nuisance was self-serving and should not have been considered as probative by the trial court. However, the argument equally applies to the witnesses for the City of Lafayette. Many witnesses were employees of the City and their testimony consisted of recitals of visits or spot checks made at the landfill site at various times. They testified there were no excessively noxious odors coming from the site and not an unusual amount of flies. Two other witnesses, one an employee of the State Office of Health Services and the other a waste consultant for the Louisiana Police Jury Association, visited the site within four days of the beginning of the trial and noticed no problem with the smell nor covering of the garbage.
No citations are needed for the rule that an appeal court may not substitute its judgment for that of the trial court on factual questions in the absence of the trial court's findings being "clearly wrong." The trial court's findings of unnecessary odor and flies emanating from the site as a result of the failure to daily cover the garbage as required by the defendant's own rules and regulations is amply supported by the testimonial evidence, and especially in the revealing photographs taken by some of the intervenors. The testimony of the intervenors indicates that the smell comes and goes and varies in intensity, depending partly upon weather conditions. Further, the defendant's rebuttal witnesses did not testify as to the long-term effects of the landfill on the life styles of nearby residents. The intervenors testified that, because of the landfill, they have been forced to curb their outside activities greatly and have been deprived of the use and enjoyment of their property.
As for the second contention of the City that policy considerations favor defendant's position, it is true that public policy considerations play an important part in an analysis a court may use in determining the competing interests of parties. A duty risk analysis under LSA-C.C. Article 2315 involves the weighing of policy factors to determine the scope of the duty owed and whether the risk involved falls within the ambit of protection as defined by the duty. The mere fact that an ostensibly properly operated landfill is to be constructed in an area may require a "balancing of interests" before a real estate speculator recovers for loss of value of adjoining property. See concurring opinion, Acadian Heritage Realty, Inc. v. City of Lafayette, supra.
In Hero Lands Company v. Texaco, Inc., supra, the court stated:
"[13] While the owners of property are not required to suffer damage as a result of works undertaken on their neighbor's property, the law has decreed that certain inconveniences must be tolerated. Society requires this of its citizens because many lawful uses of property necessarily result in inconveniences to one's neighbors. La.Civil Code art. 668.
"[14] But the extent of inconvenience the property owner must tolerate without redress depends upon the circumstances. When the actions or works cease to be inconveniences and become damaging is a question of fact. The problem is one which involves the nature of the intrusion into the neighbor's property, plus the extent or degree of damage. No principle of law confines this damage to physical invasion of the neighbor's premisesan extrinsic injury, as it were. The damage may well be intrinsic in nature, a combination of facts and conditions which, taken together, do not involve a physical invasion but which, under the circumstances, are nevertheless by their nature the very refinement of injury and damage. Salter v. B.W.S. Corporation, Inc., 290 So.2d 821 (La.1974). Compare Hillard v. Shuff, 260 La. 384, 256 So.2d 127 (1972) (Barham, J., dissenting)."
We find that the trial court did not err in allowing damages under the facts and circumstances of this case. The evidence indicates that the landfill, which is presently being operated on approximately sixty-one acres of grounds, is a large industrial operation *187 with all the attendant noise, dust and other inconveniences to the public generally connected with such large operations. The City of Lafayette acquired approximately 200 additional acres in the vicinity with a view to expanding operations in the future. The testimony indicates that the impact on the sensibilities of the neighboring residents and on land values will continue and increase in the future.
Some of the intervenors testified that the noise of the machines at the landfill was very disturbing. Mr. Bentley MacKay, Jr., defendant's expert in the field of solid waste management, testified that the noise from bulldozers or compactors at the site would wake people trying to sleep at 6:00 o'clock in the morning and that there is no way to minimize the noise. The landfill is closer to residences than other landfill sites in Louisiana, according to his testimony. The thirty-foot mound of garbage could take as much as thirty years to settle, and there could be danger of explosion from the collection of methane gas if proper measures are not exercised. Mr. MacKay testified there would always be odors from the landfill, especially when the landfill was handling a load of "deads" (animal carcasses). Other disturbances of the countryside and neighboring estates have been discussed above.
As stated above, defendant contends that public policy considerations and the balancing of interests tip the scale on the side of not allowing intervenors to recover damages they have sustained. Despite the City of Lafayette's sweeping allusions to the economic disaster that would befall municipalities and the court system, the predicted results are factually unsubstantiated. Defendant has offered no testimony or other evidence which would indicate an unreasonable economic impact on defendant if the intervenors are allowed to recover. Defendant's conclusions concerning the effect upon municipalities or the public good from allowing this type of recovery are unsupported by evidence.
Other considerations weigh against not allowing the intervenors to recover. The trial court awarded intervenors $3,500 each for distress. These damages result from defendant's carelessness and neglect in daily covering the garbage, causing odors and flies and the despoilation of the countryside through the failure of the defendant to prohibit uncovered trucks from using its facility. These damages are easily associated with the causes of action arising under LSA-C.C. Article 2315. The cause and effect of defendant's negligence in this regard is well documented. We see no public policy reason applicable which would allow defendant to negligently fail to follow its own rules and regulations and not to have to account for these actions to the persons they have damaged.
The damages sustained in the form of lowered property values are more easily associated with LSA-C.C. Article 667. Fault is not required to be found for recovery of damages sustained as a result of activity on neighboring property. Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (La.1973). The evidence of the loss of value on which the trial court relied was to the effect that the property values were lowered merely because the landfill was there. Even a properly run landfill would lower property values in the area. As stated in Acadian Heritage Realty, Inc. v. City of Lafayette, supra, a cause of action may rest on such grounds. The defendant has failed to show why these damages should not have been allowed.
We conclude the trial court did not err in allowing recovery despite the public policy considerations raised.

GENERAL DAMAGES
Defendant contends that it is not liable for general damages under the holding of Reymond v. State, Department of Highways, 255 La. 425, 231 So.2d 375 (La. 1970). In that case, the court stated the liability of a public body for property taken or damaged but not included within its actual expropriation activity must be limited to those instances where there is a physical taking or special damage peculiar to the *188 particular property and not merely general damage such as may be sustained by other properties similarly located.
The instant case is not an expropriation case. The Supreme Court in Lombard v. Sewerage & Water Board of New Orleans, supra, held that the State or its agencies are within the perview of the terms "proprietor" and "estate" as used in Civil Code Article 667. Also see Semon v. City of Shreveport, 389 So.2d 438 (La.App. 2d Cir. 1980) and Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971). Courts have allowed general damages to plaintiffs where there has been physical damage to their property. Semon v. City of Shreveport, supra, LaHaye v. Louisiana Department of Highways, 377 So.2d 1286 (La. App. 3d Cir.1977), writ denied 381 So.2d 1222 (La.1980). Damages for discomfort and inconvenience have also been awarded in the absence of physical damage to property. Borgenmouth Realty Company v. Gulf Soap Corp., 212 La. 57, 31 So.2d 488 (La.1947). See also Rayborn v. Smiley, 253 So.2d 664 (La.App. 1st Cir.1971), writ denied 260 La. 105, 111, 255 So.2d 92, 94 (1971).
The trial court did not err in allowing general damages even though there has been no physical taking nor physical damage to the property of the intervenors.

GENERAL DAMAGES TO NONRESIDENT LESSORS
Defendant contends that two of the intervenors, Joseph Baudoin and his wife, Clara Baudoin, should not be allowed to recover general damages because, as lessors of their property, they do not reside on it. The defendant contends that if this court were to allow them to recover, it would open the courts to any person who uses the roads in the area of the landfill to sue for damages.
The trial court indicated in its reasons for ruling that the general damages awarded to the intervenors were for "distress." We see no reason to differentiate between the Baudoins and the resident intervenors. Mr. Baudoin testified he knew that the property value was diminishing. Further, he visited the property every day to drop off his mother-in-law and testified that he could smell the landfill even before he got to her house. The testimony indicates the family enjoyed a close relationship and the members were all concerned about the effect the landfill was having on themselves as well as the other members of the family. The evidence indicates that the Baudoins were intimately connected with the property and concerned about the landfill's effect on their property and on the family.
The trial court did not err in granting general damages to the nonresident lessors.

QUANTUM
We do not believe that $3,500 in general damages awarded to each of the intervenors was excessive. The evidence well documents the deprivation of use and enjoyment of the property to which the intervenors were subjected, along with the attendant worries and distress caused by the knowledge that the landfill was depreciating the value of the property and by the odors and foul smells to which intervenors were subjected.
Opinions as to the amount of the decrease in value of the property were given by expert witnesses. The intervenors' expert, Mr. Preston Babineaux, determined loss of value of the land and houses by estimating their value before the installation of the landfill and by estimating their market value after the landfill became a reality. This was done for each tract of land and each house owned by the individual intervenors. Mr. Babineaux testified that in his opinion the highest and best use of the land before the landfill was present was for residential purposes; he estimated its value accordingly at $12,000 an acre. The houses were appraised at replacement cost to determine their value.
Mr. Babineaux testified that as a result of the landfill's operation, the highest and best use was transformed to one for agricultural purposes, and the value of the land diminished to $3,000 per acre. The market *189 value of the houses decreased to fifty percent of their former values, according to Mr. Babineaux. The trial court found that $6,000 per acre was the value of the property after the landfill and that $10,000 per acre was the value of the property before the landfill. The court accepted Mr. Babineaux's estimate of a reduction of the value of the houses of fifty percent. Defendant has taken issue with the trial court's findings in this regard. So do the Gossens.
Defendant complains that Mr. Babineaux used comparables of sales of agricultural land outside of Lafayette Parish and many miles away in determining the value of the property after the landfill. Defendant argues that this is illogical and inappropriate. Defendant also argues that the fifty percent reduction used by the court as the percentage of devaluation of the houses was an unproven figure and was inappropriately used by the court. Finally, defendant argues that the appraisal and testimony of Mr. Gene Cope should have been accepted by the court over Mr. Babineaux's.
As for the use of agricultural comparables outside of Lafayette Parish, we cannot say the trial court erred in considering them. The comparables tended to show that agricultural land in St. Martin, St. Landry and Evangeline Parishes was selling for between $1,500 and $2,000 an acre. Mr. Babineaux adjusted the price of the intervenors' property in consideration of its location in Lafayette Parish to $3,000 an acre.
Although the reason for the fifty percent reduction of the value of the houses was never fully explained by Mr. Babineaux, he apparently applied his expertise as a developer and builder to determine the effect of the presence of the landfill. Mr. Babineaux's familiarity with the area and his experience and expertise as a developer and builder were well established and made evident during the trial. The trial court's acceptance of Mr. Babineaux's estimate of devaluation of the residences is not clearly wrong.
Defendant argues that the testimony of its appraisers, especially that of Mr. Cope, should have been accepted over that of Mr. Babineaux. Again, the appeal court may not substitute its findings for those of the trial court unless the trial court is clearly wrong. The trial court must determine the weight to be given the testimony of competing expert witnesses. State, Department of Transportation and Development v. Aertker, 404 So.2d 316 (La.App. 3rd Cir.1981) Mr. Cope testified that the area in which the landfill and the properties were located was becoming industrialized. He testified he believed the presence of the landfill actually accelerated this industrial trend and that the value of the intervenors' property was not at all diminished by the presence of the landfill. After Mr. Cope's testimony, Mr. Babineaux testified again. In the eyes of the trial court he apparently successfully rebutted Mr. Cope's assertions. We cannot state that the trial court was clearly wrong in accepting the testimony of Mr. Babineaux over that of Mr. Cope.
In the answer to the appeal, counsel for the Gossens argues that the expert testimony of Mr. Babineaux placed the value of the land for agricultural purposes at $3,000 an acre, there was no other testimony as to agricultural value and the appraisers for defendant did not offer evidence contrary to Mr. Babineaux's as to agricultural value. Therefore, the Gossens contend the trial court erred in fixing the value of the land for agricultural use at $6,000 per acre. It is not clear from the record, however, whether the trial court did accept Mr. Babineaux's testimony that the land is now fit only for agricultural purposes. Although the testimony of experts is an aid to the court, it is not binding. State, Department of Highways v. A. Wilbert's Sons Lumber, 346 So.2d 842 (La.App. 1st Cir. 1977) and State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972). In its reasons for ruling, the trial court stated:
"The appraiser for the plaintiff, Mr. Preston Babineaux, indicates that it is his feeling that after the existence of the landfill, the highest and best use of that property is agriculture. The Court does *190 not dispute Mr. Babineaux's opinion. However, this Court is charged with the responsibility of taking into account the totality of the circumstances insofar as proper valuation is concerned.
"Drawing from both appraisers, in addition to testimony taken at trial, it would seem that plaintiffs might reasonably expect to receive Six Thousand $6,000.00) Dollars per acre for the sales of the land itself."
Apparently the trial court believed Mr. Babineaux's estimate of $3,000 per acre was low and that the other estimates given, with respect to possible residential or commercial uses of the property, were unjustifiably high. In the context of all the evidence presented, we cannot say the trial court erred in its award in this regard.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid one-half by the City of Lafayette and one-half by Gilbert W. Gossen and Florence G. Gossen.
AFFIRMED.