506 So.2d 947 (1987)
Edward T. URSIN, et al.
v.
NEW ORLEANS AVIATION BOARD and the City of New Orleans.
No. 86-C-620.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1987.
*949 Donald A. Hoffman, Robert I. Siegel, Noel L. Delery, Carmouche, Gray & Hoffman, New Orleans, for defendants-relators, N.O. Aviation Bd. and the City of New Orleans.
James J. Donelon, Partee, Leefe, Waldrip, Donelon & Mott, Metairie, Ronald P. Nabonne, Jones, Nabonne & Wilkerson, New Orleans, for defendants-relators.
Henry L. Klein, New Orleans, for plaintiffs, Edward T. Ursin, et al.
Edmund W. Golden, Wiedemann & Fransen, New Orleans, Samuel E. Schudmak, III, Metairie, for plaintiffs.
Michael Fontham, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for Air Transport of America.
Before CHEHARDY, GRISBAUM and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
In this suit, residents and property owners of an area surrounding a municipal airport seek damages for nuisance and inverse condemnation. They claim excessive noise from aircraft using the airport has interfered with their property ownership rights and has produced various physical ills and psychological disturbances.
The matter first came before this Court on October 20, 1986, on writ application by the defendants. The district court had denied the defendants' motion to vacate an order that allowed the plaintiffs to add 6,500 additional plaintiffs; the district court had also refused to grant the defendants' motion for partial summary judgment limiting the plaintiffs' cause of action to inverse condemnation.
We denied the application on October 28, 1986, finding no abuse of the trial court's discretion. On January 9, 1987, the Supreme Court granted writs and remanded the matter "for briefing, argument and opinion," 499 So.2d 79. After filing voluminous additional briefs and exhibits, the parties presented oral argument to us on March 11, 1987.
The issues may be divided into two categories: First, who are the proper parties-plaintiff in this suit? Second, what causes of action may these plaintiffs assert?

I. PROCEDURAL HISTORY
This suit was originally filed as a class action in August 1980 by six plaintiffs who own property in Jefferson Parish near New Orleans International Airport. The defendants are the airport's managing agency (the New Orleans Aviation Board) and its owner (the City of New Orleans). (The City of Kenner and the Parish of Jefferson also were made defendants, but were dismissed early in the suit.) The plaintiffs sought damages for inverse condemnation of their property and for nuisance resulting from noise caused by aircraft using the airport runways.
The defendants filed a peremptory exception of no cause of action as to the class action. On March 20, 1981, judgment was rendered dismissing the class action but reserving to plaintiffs the right to maintain individual actions. The plaintiffs did not appeal the dismissal of the class action.
(After rendition of the judgment dismissing the class action, the case was transferred to another district judge. The change may account for the discrepant effect of the judgment now at issue before us.)
The original petition was followed by four supplemental and amending petitions, in which the plaintiffs gradually added 37 more plaintiffs (for a total of 43 plaintiffs) *950 and also elaborated their allegations regarding damages.
In early November 1983, plaintiffs filed a motion to notify indispensable parties of the pendency of the suit. On November 22, 1983 the district court rendered judgment granting that motion. The court decreed that all property owners and residents of a target area around the airport known as the "Ldn 65 Noise Contour" are indispensable parties and prescribed a procedure for notifying them of the suit. The defendants did not apply for a new trial on the ruling. Further, they sought neither supervisory nor appellate review at the time.
The procedure authorized by the district court for notification of "indispensable parties" employed newspaper advertisements and mass mailings to advise landowners and residents in the target area they could join in the suit by sending a postcard to plaintiffs' counsel.
In 1984, the defendants filed third-party complaints against certain employees of the Federal Aviation Administration. The third-party defendants removed the state proceeding to the United States District Court for the Eastern District of Louisiana, where it was consolidated with a similar suit between these parties that had been filed in federal court in 1982.
Most of the issues being litigated here were brought up in the federal court. Ultimately, however, the federal judge ruled that state court is the proper forum to determine the parties' rights and liabilities. In February 1985, the federal court issued a stay of the federal proceeding and remanded the state case to the 24th Judicial District Court.
In December 1985, defendants filed a motion for partial summary judgment, in which they argued that plaintiffs' claims for tort damages are preempted by federal law and that plaintiffs' exclusive remedy lies in inverse condemnation.
In March 1986, plaintiffs amended their petition a fifth time, to add approximately 6,500 "postcard plaintiffs" who had responded to the notification approved by the state district court in 1983. That amending petition listed the names and addresses of the postcard plaintiffs and incorporated by reference the allegations of the original petition and the four preceding supplemental and amending petitions, but it did not make an individual statement of material facts for each new plaintiff.
In May 1986, defendants filed a motion to vacate the order that allowed the plaintiffs to add the postcard plaintiffs; the motion was styled, alternatively, an exception of improper joinder. Included in the same pleading was an exception of nonconformity of the petition to the requirements of LSA-C.C.P. art. 891 (in which the defendants complained that the plaintiffs had failed to include individual statements of material facts regarding the postcard plaintiffs) and an exception of lack of procedural capacity.
On July 10, 1986, the district court denied the motion to vacate/exception of improper joinder, denied the other exceptions, and denied the motion for partial summary judgment. Thereafter the defendants filed this application for writs, seeking reversal of that judgment.

II. PROCEDURAL ISSUES
Defendants' thesis that the postcard plaintiffs were improperly added includes several arguments: First, that the procedure employed to join the postcard plaintiffs was improper; second, that the postcard plaintiffs should be dismissed for improper cumulation of parties; third, that the amending and supplemental petition by which the 6,500 postcard plaintiffs were added fails to set forth the material facts upon which the cause of action is based.
We find, however, that the parties' tardiness in challenging certain actions of the district court precludes our review of the issue of proper parties-plaintiff.
On one hand, because the plaintiffs did not appeal the 1981 dismissal of the class action, that judgment became final, barring further consideration of the class action aspect.
On the other hand, the 1983 judgment that declared owners and residents of *951 property in the target area to be indispensable parties had the practical effect of circumventing the prior ruling denying a class action. The persons declared to be indispensable parties are the same persons the plaintiffs had designated as members of the proposed class. The defendants, however, failed to seek timely review of the 1983 judgment; they failed even to move for a new trial on the issue of indispensable parties.
In our view, to allow the defendants to overturn that judgment now would cause manifest injustice. We acknowledge that the 1983 judgment was interlocutory; interlocutory judgments usually are not appealable and can be reviewed only by application for supervisory writs. Under LSA-C.C.P. art. 2083, however, an appeal may be taken from an interlocutory judgment which may cause irreparable injury. Considering the import and potential impact of the 1983 judgment, not only on the present plaintiffs and the potential plaintiffs, but also on the defendants, the defendants should have sought review of the judgment, by writ or by appeal, when it was rendered.
Our view is supported by the reasoning in two cases dealing with class actions. In State ex rel. Guste v. General Motors Corp., 354 So.2d 770 (La.App. 4 Cir.1978), affirmed, 370 So.2d 477, the Louisiana attorney general filed a class action suit over defective automobiles. In explaining why the Fourth Circuit decided to hear the appeal of the interlocutory judgment allowing the class action, the court stated, 354 So.2d at 773:
"If a definitive and final judgment is not rendered, initially, on the class action question, irreparable injury may result not only to General Motors but also to the consumer. If it should be determined at a later date (after the matter has been heard on the merits) that no entitlement to a class action exists, the delay resulting to the consumer to file a suit, individually, would make a fair assessment of damages difficult because of the resulting depreciation of the vehicle. Furthermore, from defendant's stand-point, any delays resulting in depreciation of the automobiles could conceivably result in added immeasurable damages to the defendant causing confusion in the proper evaluation of damages.
"Though it is generally true that costs entailed in the litigation of a matter have been held not to constitute irreparable damages; nevertheless, in the instant case, the maintenance of plaintiffs' claim as a class action involves the cost of an overwhelming number of notices and court days to be set aside for trial of the matter. If, at a later time, after trial on the merits and review, it is determined that the trial judge erred in permitting the matter to be tried as a class action, immeasurable expense and innumerable wasted court days will have resulted. Furthermore, litigants in other matters will have been needlessly delayed. * *" [Footnote omitted]
Similarly, in Millet v. Rollins Environmental Serv., Etc., 421 So.2d 935 (La.App. 1 Cir.1982), the court allowed appeal of a judgment denying the defendants' exception of improper use of a class action. The court reasoned that to force the parties to wait for appeal after determination of the merits could cause irreparable injury due to difficulty in assessing damages, plus immeasurable expense and innumerable wasted court days, if the class action were later disallowed.
The defendants have been unable to explain satisfactorily why they waited two-and-a-half years to challenge the ruling on indispensable parties. They contend their motion to vacate was timely because it was directed to the district judge's order allowing the filing of the amending petition that added the postcard plaintiffs. That argument is misleading; it is plain that defendants are attacking the substance of the 1983 judgment. In light of the district judge's prior ruling in that 1983 judgment, he could not have refused to allow the plaintiffs to amend their suit by adding the parties who were declared indispensable. See Updegraff v. Parish of St. Bernard, 433 So.2d 863 (La.App. 4 Cir.1983); LSA-C. C.P. art. 646.
*952 The merit defendants' arguments might have had three years ago is outweighed now by the effects of the 1983 judgment. The notification procedures commanded by the judgment were undertaken, at considerable expense to the original plaintiffs, and thousands of additional persons have become involved in the suit as a result. We construe defendants' failure to challenge the 1983 judgment as an acquiescence that precludes reversal now.
Our conclusion is supported by analogy to a case defendants themselves cite. In Pan Am. World Airways, Inc. v. U.S. Dist. Ct., C.D. Cal., 523 F.2d 1073 (9th Cir.1975), the district court's order commanding notification of potential plaintiffs was reviewed on writ of mandamus. The court of appeals stated that immediate review was required because erroneous notice to potential plaintiffs could not be remedied on appeal after final judgment and the petitioners could not be relieved of the burden of actions filed in response to such notice.
Defendants express concern that they will be exposed to additional claims. They fear that potential plaintiffs who choose not to join in the suit may later be allowed to file separate suits or, alternatively, that those potential plaintiffs will not be barred from asserting their claims by their failure to join in this suit. Their apprehensions are unwarranted. Because the residents and property owners of the target area have been declared indispensable parties, the action cannot proceed without them. As counsel for the present plaintiffs admit, any persons who do not join as plaintiffs will have to be joined as defendants so the case can be adjudicated. See LSA C.C.P. arts. 641, 644.
Defendants' next contention, that the postcard plaintiffs should be dismissed for improper cumulation of parties, is simply another attack on the 1983 judgment, from a different angle. We point out that the only party who may raise the exception of improper joinder of parties is the party who has been improperly joined; the remedy is not available to a party who is properly joined. Krawfish Kitchen Restaurant, Inc. v. Ardoin, 396 So.2d 990 (La.App. 3 Cir.1981).
The defendants' third argument is that the amending petition failed to comply with LSA-C.C.P. art. 891; they claim it does not set forth the material facts upon which the postcard plaintiffs' cause of action is based. Specifically, defendants assert that each plaintiff must plead not only his name and domicile, but also must describe the property allegedly taken and his interest in the property, state the date he acquired the property interest and the date of the alleged taking, and state how the defendants allegedly interfered with the use of the property to such an extent as to substantially deprive him of its use and lower its market value.
The petition by which the postcard plaintiffs were added was actually the fifth supplemental and amending petition in this suit. It realleged and incorporated by reference the causes of action listed in the previous petitions.
The original petition had alleged that the defendants acted in concert with each other "to enact or cause to be enacted" laws that restrict plaintiffs' utilization and enjoyment of their property, in order to facilitate expansion of New Orleans International Airport, to the detriment of plaintiffs and the enrichment of defendants. Specifically, the plaintiffs alleged, the defendants have conspired over a number of years to expand the runways, increase the volume of air traffic, increase the size of aircraft utilizing the airport, reduce the height of landing and takeoff patterns, and diminish noise abatement procedures and devices.
They alleged further that defendants' actions resulted in plaintiffs' inability to use the outdoors due to noise and dust, inability to carry on a normal conversation due to noise, inability to enjoy television and radio due to interference from low-flying aircraft, inability to open windows due to noise and dust, and inability to sleep normally. In addition, plaintiffs alleged they suffered mental anguish due to inverse condemnation and the inability to carry on normal daily activities, and physical injuries *953 consisting of loss of and diminution in hearing ability.
The original petition was followed by three supplemental and amending petitions that added more plaintiffs, then by a fourth supplemental and amending petition that elaborated on plaintiffs' injuries as follows: mental anguish and emotional distress; physical pain and suffering; loss of and diminution in hearing ability; aggravation, inconvenience, anger, frustration, and psychiatric and psychological neuroses; shortened life expectancy; increased likelihood of death from heart attack, stroke, suicide and violent crime; and increased risk of death from stress-related illnesses.
The fifth supplemental and amending petition, by which the postcard plaintiffs were added, restated the plaintiffs' claims as follows: inverse condemnation; servitude for use of "superadjacent air space"; breach of limitations on use, depriving plaintiffs of "the liberty of enjoying their own property," violating the restrictions under LSA-C.C. art. 667; nuisance, by maintaining "inherently unacceptable noise levels and pollutant emissions"; incompatible land use; tortious interference with property rights; and "any other causes of action under which plaintiffs may be entitled to recover."
We conclude these allegations, although many are redundant, sufficiently comply with the requirements of C.C.P. art. 891 in their statements of material facts. Defendants may obtain through the discovery process any additional information they require to present their defenses.

III. SUBSTANTIVE ISSUES
The second major issue concerns the causes of actions the plaintiffs are entitled to assert. A property owner's right to be justly compensated if his property is taken or damaged for public purposes is constitutionally protected. La. Const. Art. 1, Secs. 2, 14; U.S. Const., Amends. 5, 14.
"Since a taking or damaging of property may in fact occur without expropriation proceedings by a public body through oversight or lack of foresight, there must be some proceeding whereby an owner may seek redress when his property is damaged or taken without the proper exercise or eminent domain. Such an action is often referred to as `inverse condemnation' * * *." Reymond v. State, Department of Highways, 255 La. 425, 231 So.2d 375, 383 (La.1970).
There is no dispute that plaintiffs are entitled to be compensated if a court determines that airport noise has damaged their property to such an extent as to comprise a "taking" by the public body that owns the airport. The defendants contend, however, that plaintiff's exclusive remedy is in inverse condemnation. That was the basis for their motion for partial summary judgment, in which they argued that any claims for other damages have been preempted by the enactment of the Federal Aviation Act of 1958, 49 U.S.C. Sec. 1301, as amended.
They proffer four arguments in support of this proposition: that real property owners who claim damages for noise from aircraft flying in accordance with regulations are limited to the constitutional remedy of inverse condemnation, that claims for tort damages by noise from aircraft in lawful flight are preempted by federal law, that claims for nuisance damages caused by noise at the airport are barred by the doctrine of legalized nuisance, and that any claims for trespass damages are also barred because the aircraft operations are in the public domain.
Preemption of the field of aviation noise control was addressed by the United States Supreme Court in the case of City of Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). In that case the City of Burbank enacted an ordinance that made it unlawful for jet aircraft to take off from the Hollywood-Burbank Airport between the hours of 11:00 P.M. and 7:00 A.M. The Court, holding that Congress had impliedly preempted the field of aviation noise control, struck down the city ordinance.
Defendants contend that the preemption recognized in Burbank extends to all actions concerning excessive aircraft noise except those for inverse condemnation. Their interpretation of Burbank is erroneous, *954 however. The decision plainly precludes regulation by state and local governments pursuant to their police power. It does not reach the issue of the rights and obligations of a proprietor to control aircraft noise levels. In Footnote 14 of the Burbank opinion, the court specifically limited its holding to regulation of aircraft noise under police power:
"[W]e are concerned here not with an ordinance imposed by the City of Burbank as `proprietor' of the airport, but with the exercise of police power. * * * Thus, authority that a municipality may have as a landlord is not necessarily congruent with its police power. We do not consider here what limits, if any, apply to a municipality as a proprietor." 411 U.S. at 636, n. 14, 93 S.Ct. at 1861, n. 14.
The Supreme Court clearly did not intend its holding preempting the police power of a local government in this field to be extended to the proprietarial power of an airport owner. The Court expressly stated that it was not deciding the issue of the application of the preemption doctrine to regulation by airport proprietors.
As recognized by the Burbank court, the Federal Aviation Act of 1958 and its amendments do not expressly preempt the area of aviation noise control. Therefore, we must review the relevant federal and state laws to determine "whether under the circumstances of this particular case, [damage remedies under state law stand] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).
The Federal Aviation Act of 1958 was amended by the Noise Control Act of 1972, which provides that the Federal Aviation Administration, after consulting with the Environmental Protection Agency, shall provide "for the control and abatement of aircraft noise and sonic boom, including application of such standards and regulations * * *." Sec. 611(b)(1), 86 Stat. 1239, 49 U.S.C. Sec. 1431(b)(1) (1970 Ed., Supp. II).
In Burbank, the Court quoted the Senate Report concerning Sec. 611:
"`States and local governments are preempted from establishing or enforcing noise emission standards for aircraft unless such standards are identical to standards prescribed under this bill. This does not address responsibilities or powers of airport operators, and no provision of the bill is intended to alter in any way the relationship between the authority of the Federal government and that of State and local governments * * *.'" Burbank, 411 U.S. at 634, 93 S.Ct. at 1860, citing S.Rep. No. 92-1160, pp. 10-11, U.S.Code Cong. & Admin. News 1972, p. 4663.
This legislation also was described in a written opinion by the Secretary of Transportation to the Senate, quoted in Burbank, as follows:
"`[T]he proposed legislation will not affect the rights of a State or local public agency, as the proprietor of an airport, from issuing regulations or establishing requirements as to the permissible level of noise which can be created by aircraft using the airport. Airport owners acting as proprietors can presently deny the use of their airports to aircraft on the basis of noise considerations so long as such exclusion is nondiscriminatory.'" (Emphasis added.) 411 U.S. at 635, n. 14, 93 S.Ct. at 1861, n. 14.
In approving this letter, the Senate Report stated that it was "`not the intent of the committee in recommending this legislation to effect any change in the existing apportionment of the powers between the Federal and State and local governments.'" Burbank, 411 U.S. at 635, 93 S.Ct. at 1860.
Previous U.S. Supreme Court cases concerning preemption do not provide "precise guidelines in the present controversy, for each case turns on the peculiarities and special features of the federal regulatory scheme in question." Burbank, 411 U.S. at 638, 93 S.Ct. at 1862. With this in mind, after a thorough examination of the pertinent legislation, we are convinced that Congress *955 did not intend to preempt the entire area of aviation noise control.
Although, as stated in Burbank, Congress preempted regulation of noise levels by the exercise of State and local government police powers, Congress clearly did not intend to eliminate the ability of airport proprietors to maintain reasonable levels of aircraft noise through regulation. Airport proprietors, in determining the air services they will offer, bear the responsibility of insuring that those services do not hinder the adjoining landowners' enjoyment of their property. Failure to adequately control aviation noise necessarily results in compensible injuries. See Griggs v. County of Allegheny, Pennsylvania, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962).
We find that state actions by property owners alleging damages due to excessive noise are neither exclusive remedies nor are they federally preempted. See Baker v. Burbank-Glendale-Pasadena Airport, 39 Cal.3d 862, 218 Cal.Rptr. 293, 705 P.2d 866 (1985); Krueger v. Mitchell, 112 Wis.2d 88, 332 N.W.2d 733 (1983); Northeast Phoenix v. Scottsdale Mun. Airport, 130 Ariz. 487, 636 P.2d 1269 (App. 1981); Greater Westchester v. City of Los Angeles, 26 Cal.3d 86, 160 Cal.Rptr. 733, 603 P.2d 1329 (1979).
Our conclusion is buttressed by Section 1506 of the Federal Aviation Act, which provides, "Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies."
Our remaining task is to determine whether, under the laws of our State, plaintiffs have any remedies other than an action for inverse condemnation.
Defendants argue that the case of Reymond v. State, Department of Highways, supra, held that the appropriate and exclusive remedy for damages from a public improvement is inverse condemnation. Defendants strenuously object to any recovery under LSA-C.C. art. 667 (the basis of Louisiana nuisance law), which states,
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
LSA-C.C. art. 669 has often been treated in parity with Art. 667 as a source of Louisiana nuisance law. Art. 669 states,
"If the works or materials for any manufactory or other operations, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place."
Article 669 has been interpreted as limiting the activities upon and uses of an estate to "those which will not cause insufferable inconvenience to others." Reymond, supra, 231 So.2d at 382, n. 6.
In the Reymond case, a homeowner sued the State for damages to her property resulting from construction of a nearby elevated roadway. The trial court had awarded the plaintiff not only "severance or consequential damages" under La. Const. Art. 1, Sec. 2, but also damages under C.C. art. 667. The Supreme Court set aside the award made for "diminution in value caused by impaired accessibility, discomfort, and disturbance," but affirmed the award for "diminution in market value ... by reason of structural damage attributable to vibration from pile driving activity":
"Damages which cause discomfort, disturbance, inconvenience, and even sometimes financial loss as an ordinary and general consequence of public improvements are not compensable, and are considered damnum absque injuria.
"The damage which a property owner may claim against one exercising the power of eminent domain would exclude non-physical damage, and the physical damage which is recoverable must be proximately caused by the improvement as designed and constructed or must be the probable, the immediate, the direct, and the necessary result and effect of *956 the activities engaged in during construction. In short, compensable physical damage to adjacent property is restricted to that which is actually a consequence of the activity complained of." 231 So.2d at 384.
The court also stated that the liability of a public body under inverse condemnation "must be limited to those instances where there is a physical taking or damage to that property or a special damage peculiar to the particular property and not general damage sustained by other property similarly located." 231 So.2d at 383.
Relying on these passages, the defendants here argue that plaintiffs' claims are limited to recovery for inverse condemnation, for which the ordinary measure of damages is the difference in the market value of the property before and after the damaging or taking. Plaintiffs' other claims, they assert, are damnum absque injuria. Many of the statements made in the Reymond case, however, have been limited or disapproved by later cases.
In Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971), the trial court had awarded the plaintiff damages for structural damage to his home caused by a contractor's work on behalf of the parish to enlarge a nearby drainage canal. In upholding the award, the Supreme Court noted that the construction project was not the direct result of expropriation proceedings, nor was the damage to Chaney's house incidental to an expropriation proceeding. The court upheld Chaney's recovery under Article 667, however, designating as dicta those portions of the Reymond case that discussed Article 667: "Furthermore, we do not agree that we should follow the interpretation placed upon Article 667 by the opinion in Reymond." 249 So.2d at 184.
The Chaney court concluded,
"An activity, then, which causes damage to a neighbor's property obliges the actor to repair the damage, even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on which is significant; it is the fact that the activity causes damage to a neighbor which is relevant." 249 So.2d at 186.
Under these concepts, the court found the parish liable.
In State, Department of Highways v. Garrick, 260 La. 340, 256 So.2d 111, 114 (1971), the court stated, "Noise and vibration are not damna absque injuria."
In Dean v. Hercules, Incorporated, 328 So.2d 69, 73 (La.1976), the court stated that application of Art. 667 was not limited to immovable property:
"C.C. 667 is not limited in its operation to damage to immovable property. Rather, the article specifically provides that the landowner cannot make any work on his estate `which may be the cause of any damage to [his neighbor].' Article 667 seems to encompass liability for personal injuries." 328 So.2d at 73.
In State, Through Dept. of Highways v. Ellender, 379 So.2d 1069 (La.1980), the Supreme Court held that defendant landowners in an expropriation suit were entitled to assert reconventional demands against the State regardless of the basis of such demands. The court specifically overruled two 1932 cases which had limited the issues in expropriation proceedings to the value of the part taken and damages to the remainder.
In Acadian Heritage Realty v. City of Lafayette, 434 So.2d 182 (La.App. 3 Cir. 1983), writ denied 440 So.2d 733, the plaintiff landowners recovered damages for nuisance and diminution of property value based on the City's operation of a landfill. Affirming the award, the Court of Appeal ruled,
"[A] court may grant relief for operations on land causing inconvenience to neighboring property upon proof that the activity carried on is of sufficient intensity, annoyance and inconvenience that he who causes it has created a nuisance. * * An action for such abuse of rights arises from Louisiana Civil Code Articles 2315, 667 and 668. * * *" 434 So.2d at 185.
Noting that the City of Lafayette contended the Reymond case prohibited any *957 award of general damages, the court pointed out,
"The instant case is not an expropriation case. The Supreme Court in Lombard v. Sewerage & Water Board of New Orleans, supra, held that the State or its agencies are within the perview [sic] of the terms `proprietor' and `estate' as used in Civil Code Article 667. * * * Courts have allowed general damages to plaintiffs where there has been physical damage to their property. * * * Damages for discomfort and inconvenience have also been awarded in the absence of physical damage to property. * * *" 434 So.2d at 188.
Finally, the court addressed the City of Lafayette's argument that recovery of general damages should be prohibited for policy reasons. The City asserted that if recovery by plaintiffs were allowed, floodgates of litigation in the lower courts would be opened, resulting in an undesirable burden on the court system and tremendous economic disaster on municipalities.
Similar concerns are raised by the defendants here. We adopt the position of the Acadian Heritage Realty court on that question:
"[I]t is true that public policy considerations play an important part in an analysis a court may use in determining the competing interests of parties. A duty risk analysis under LSA-C.C. Article 2315 involves the weighing of policy factors to determine the scope of the duty owed and whether the risk involved falls within the ambit of protection as defined by the duty. The mere fact that an ostensibly properly operated landfill is to be constructed in an area may require a `balancing of interests' before a real estate speculator recovers for loss of value of adjoining property. * * *" 434 So.2d at 186.
We conclude that any language in Reymond that could be construed as limiting the plaintiffs' remedy in this case to inverse condemnation has been implicitly overruled by subsequent jurisprudential development. In particular, the holdings in Dean v. Hercules, Incorporated, supra (interpreting C.C. art. 667 to encompass personal injuries as well as property damage arising from a neighboring landowner's use of his land), and in the Acadian Heritage Realty case, supra, make it impossible to say that recovery under inverse condemnation eliminates any other recovery.
We hold, therefore, that insofar as plaintiffs prove property damage sufficient to constitute a "taking" by the defendantseither physical damage or other damage causing diminution in the market value of their propertytheir recovery is for inverse condemnation. Insofar as plaintiffs establish that the activities conducted at the airport caused personal injury, whether physical or otherwise, or property damage that is not a "taking," their recovery is under C.C. arts. 667-669 and/or C.C. art. 2315. The evidence presented by the plaintiffs will determine which remedy the trier of fact should apply.
Considering the foregoing, it is our opinion that there is no reason to vacate the contested rulings of the district court. Accordingly, the application is denied.
WRIT DENIED.